**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN HOFFMAN and HOFFMAN ) <br> FINANCIAL SERVICES, INC., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> NATIONWIDE MUTUAL INSURANCE ) <br> COMPANY and ROSS KIMMEY, ) <br> ) <br> Defendants. ) | Case No. 10-cv-3841 <br> Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' motion [21] to dismiss Plaintiffs' complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Defendants' motion is granted, and Plaintiffs' claims are dismissed without prejudice.

**I.  Background**[1]

Plaintiff John Hoffman ("Hoffman") is an Illinois resident who is the sole owner and president of Plaintiff Hoffman Financial Services, Inc., an Illinois corporation. Plaintiffs and Defendant Nationwide Mutual Insurance Company, Inc. ("Nationwide Mutual") were parties to an "Agent's Agreement," effective August 1, 1998, to sell insurance and financial products that Nationwide and affiliated companies (collectively referred to in this opinion as "Nationwide")

---

[1] For purposes of Defendant's motion to dismiss, the Court assumes as true all well pleaded allegations set forth in the complaint. See, *e.g., Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

offered.[2] Defendant Ross Kimmey ("Kimmey") was an in-house loan consultant whom Nationwide employed.

Nationwide set a goal of becoming the "number 3 insurer by share," countrywide, by 2009. In pursuit of that goal, Nationwide decided to increase its points of distribution by adding new storefronts and providing its sales managers with bonuses based on their success in developing those additional offices and "other expansion criteria." Nationwide encouraged agents to take out Capital Access Program loans ("CAP loans") and Independent Agency Acquisition loans ("IAA loans") to capitalize the expansion effort. Nationwide and Kimmey prepared business plans and "pro formas" for agents that described the expansion initiative and set forth the business assumptions and estimates associated with the loans. The business plans and pro formas contained projected income and expenses from satellite offices, as well as performance growth requirements.

Nationwide Bank provided the CAP and IAA loans to agents and/or agencies that acquired a Nationwide book of business, merged with an existing Nationwide agency, opened a new Nationwide storefront, or purchased an independent agency with the intention of converting it into a Nationwide agency.[3] Agents were to put up their future earnings as collateral for the loans. When an agent took out more than one loan, each loan provided that a default on one loan would constitute a default on any other loan or credit that the agent had obtained from Nationwide Bank. Each loan was cross-collateralized with any other collateral in which

---

[2] The family of "Nationwide" companies includes: Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company, Nationwide Life Insurance Company, Nationwide General Insurance Company, Nationwide Property and Casualty Insurance Company, Nationwide Variable Life Insurance Company, and Colonial Insurance Company of California.

[3] Nationwide Bank is not a defendant in this action.

2

Nationwide Bank had a security interest in connection with other loans or credits. Nationwide would agree to waive repayment of the loan(s) if the agent met the performance requirements set forth in the business plans and pro formas.

Plaintiffs allege that Nationwide and Kimmey induced them to take out CAP loans and/or IAA loans in order to develop additional offices and hire staff. Plaintiffs claim that Nationwide chastised Plaintiffs that they would not be "team players" if they did not engage in these expansion activities. In April 2004, Plaintiffs took out an IAA loan in order to acquire the McCabe Agency in Peoria, Illinois. The acquisition was governed by a business plan and pro forma that Nationwide and Kimmey had prepared. In 2006, Plaintiffs decided to open a satellite office in Plano, Texas. Plaintiffs took out a CAP loan to finance the Plano expansion effort. The CAP loan was governed by a pro forma and a Performance Agreement that Plaintiffs and Nationwide entered into in February 2006.

Plaintiffs allege that the pro formas associated with the CAP and IAA loans contained knowingly false projected incomes and expenses that painted a rosier picture of the financial viability of the expansion efforts than was actually possible. Plaintiffs further allege that the performance growth requirements set forth in the loan-related documents were not reasonable or achievable. As a result, Plaintiffs allege, Nationwide "knowingly misrepresented to the agents hope." [19, at ¶ 20.] Plaintiffs claim that Nationwide intentionally included these misrepresentations in order to induce agents to enter into various loans, to the agents' detriment. Plaintiffs allege that they in fact relied on these misrepresentations when they took out the CAP and IAA loans. After taking out the CAP and IAA loans, Plaintiffs claim that Nationwide changed the rules, goals, and requirements for agents, and competed with its agents by selling insurance through Allied Insurance, an affiliate agency. Plaintiffs allege that as a result of the

purported misrepresentations and post-agreement changes in agent performance growth requirements, they were deprived of compensation, incurred expenses, lost time and effort that they could have devoted to other enterprises, became personally indebted for the CAP and IAA loans, and accrued interest on those loans when the performance growth requirements were not met. Plaintiffs allege that Nationwide, meanwhile, profited by receiving interest from Plaintiffs that was payable to Nationwide Bank.

In their first amended complaint [19], Plaintiffs seek to recover damages: from Defendants Nationwide and Kimmey for fraudulent inducement and intentional misrepresentation with respect to the 2006 Texas CAP loan (Count I); from Nationwide and Kimmey for fraudulent inducement / intentional misrepresentation of the Illinois IAA loan (Count II);[4] from Nationwide for breach of contract (Count III); and from Nationwide for fraudulent inducement (Count IV). Defendants have filed a motion to dismiss Plaintiff's first amended complaint in its entirety [22].

## II. Legal Standard on a Rule 12(b)(6) Motion

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the suit. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citations omitted). A complaint must satisfy the several requirements of Rule 8 to survive a 12(b)(6) motion to dismiss. FED. R. CIV. P. 8. First, the complaint must provide "a short and plain statement of the claim showing that the pleader is

---

[4] The heading for Count II of Plaintiff's first amended complaint states: "Fraudulent Inducement/Intentional Misrepresentation Illinois CAP Loan (Defendants Nationwide and Kimmey)." [19, at 11.] However, all of the allegations supporting Count II reference the IAA loan that Plaintiffs took out in April 2004. The Court therefore assumes that Count II concerns the 2004 IAA loan to acquire the McCabe Agency in Peoria (and that Count I alone concerns the 2006 CAP loan to open a satellite office in Plano).

4

entitled to relief," FED. R. CIV. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555, 569 n.14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic*, 550 U.S. at 579-80. The Court accepts as true all of the well-pleaded facts alleged by Plaintiffs and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

When a complaint sounds in fraud, the allegations of fraud must satisfy the heightened pleading requirements of Rule 9(b). FED. R. CIV. P. 9(b); see also *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (citing *Rombach v. Chang*, 355 F.3d 164, 170-71 (2d Cir. 2004)). Rule 9(b) states that for "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). A complaint satisfies Rule 9(b) when it alleges "the who, what, when, where, and how: the first paragraph of a newspaper story." *Borsellino*, 477 F.3d at 507 (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). Rule 9(b), read in conjunction with Rule 8, requires that Plaintiffs plead "the time, place and contents" of the purported fraud. *Fujisawa Pharm. Co., Ltd. v. Kapoor*, 814 F. Supp. 720, 726 (N.D. Ill. 1993). "The purpose of this heightened pleading requirement is to 'force the plaintiff to do more than the usual investigation before filing his

complaint.'" *Amakua Dev. LLC v. H. Ty Warner*, 411 F. Supp. 2d 941, 953 (N.D. Ill. 2006) (citations and internal quotation marks omitted).

**III.     Analysis**

   **A.     Whether the Court May Consider Exhibits to Defendants' Motion to Dismiss**

As an initial matter, the Court must determine whether it can properly consider certain exhibits that Defendants attached to their motion to dismiss, without converting the motion to one for summary judgment. Defendants attached four exhibits to their motion: the Agent's Agreement that Plaintiffs and Nationwide entered into on August 1, 1998 (Exhibit A); the pro forma and business plan associated with the 2004 IAA loan that financed Plaintiffs' acquisition of the McCabe Agency in Peoria, Illinois (Exhibit B); the Performance Agreement associated with the 2006 CAP loan that financed Plaintiffs' opening of a satellite office in Plano, Texas (Exhibit C); and two recent decisions by the Eastern District of Michigan dismissing fraud claims that other former Nationwide agents brought against Nationwide (Exhibit D). Plaintiffs concede that the Court may properly consider Exhibits B and C because the IAA loan-related pro forma and business plan and the CAP loan-related Performance Agreement "are referenced in and relied upon in Plaintiff's pleading."[5] [31, at 4.] However, Plaintiffs argue that Exhibits A and D may not be considered by the Court without converting Nationwide's motion to dismiss into a motion for summary judgment.

Under Rule 12(d), when a party presents "matters outside the pleadings" as part of the party's Rule 12(b)(6) motion, the motion must be treated as one for summary judgment. FED. R. CIV. P. 12(d); see also, *e.g.*, *R.J.R. Servs., Inc. v. Aetna Cas. and Sur. Co.*, 895 F.2d 279, 281 (7th

---

[5] Plaintiffs attached the pro forma associated with the 2006 CAP loan to their opposition brief, and similarly argue that the Court can consider the document as it was referenced and relied upon in the first amended complaint.

6

Cir. 1988) (holding that "if matters outside the pleadings are presented to and considered by the court in connection with a motion to dismiss, the district court is required to treat the motion to dismiss as a summary judgment motion"). However, in *Tierney v. Vahle*, the Seventh Circuit stated that when a document otherwise falling under Rule 12(d) is (1) referred to in the complaint, (2) concededly authentic, and (3) central to the plaintiff's claim, the document may be considered even if it was not attached to the plaintiff's pleadings. 304 F.3d 734, 738 (noting that "the usual example is a contract, in a suit for breach of contract"). The Seventh Circuit has further noted that:

> [t]his court has been relatively liberal in its approach to the rule articulated in *Tierney*. See, *e.g.*, *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (upholding consideration of an agreement quoted in the complaint and central to the question whether a property interest existed for purposes of 42 U.S.C. § 1983); *Venture Associates v. Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir. 1992) (admitting letters, to which the complaint referred, that established the parties' contractual relationship); *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 739 (7th Cir. 1986) (permitting reference to a welfare plan referred to in the complaint in order to decide whether the plan qualifies under ERISA).

556 F.3d 575, 582 (7th Cir. 2009) (holding that although plaintiffs contested the truthfulness of certain statements in the documents attached to the defendants' motion to dismiss, the documents "fit within the exception to Rule 12(d)'s general instruction").

With respect to Exhibit A, Plaintiffs concede that they reference the Agent's Agreement in their first amended complaint. The second paragraph of the complaint states: "Plaintiffs and Defendant NATIONWIDE MUTUAL INSUR[A]NCE COMPANY, Inc., entered into an Agent's Agreement, effective August 1, 1998, to sell the various lines of insurance and financial products offered by the Nationwide family of companies." [19, at ¶ 2.] Plaintiffs at no point contest the authenticity of the Agent's Agreement. However, Plaintiffs object to the Court's consideration of the Agent's Agreement on the ground that the first amended complaint "neither seeks to

7

incorporate by reference any of the provisions of this Agreement, nor do Plaintiffs rely in any way on its content to support the claims pled." [31, at 4.]

Reading the complaint as a whole, it appears that Plaintiffs' breach of contract claim is based in part on the Agent's Agreement. Under the heading, "Count III, Breach of Contract (Defendant Nationwide)," the complaint states:

> 52. Plaintiffs *reallege the preceding paragraphs 1 through 28* and 38 through 51 as if fully set forth herein.
> 53. The *agreements made by Plaintiffs and Defendant constitute a contract* in which Defendant represented to Plaintiffs that they would be provided the opportunity to succeed as a sales producer of Nationwide products and Defendant would not compete against Plaintiffs through selling direct to customers or through Allied Insurance, an insurer owned by NATIONWIDE.
> 54. The *Defendant breached its agreement* * * *.

[19, at ¶¶ 52-54 (emphasis added).] And, in a more general sense, Plaintiffs' relationship with Nationwide and decision to expand its Nationwide business was based on and flowed out of the Agent's Agreement. The Court therefore concludes that the Agent's Agreement is central to Plaintiff's claim and that, in exercise of its discretion, the Court may consider the document without converting Defendants' motion into a summary judgment motion.

With respect to Exhibit D, the Court may take judicial notice of matters of public record for purposes of deciding a motion to dismiss without converting the 12(b)(6) motion into a motion for summary judgment. See *Palay v. United States*, 349 F.3d 418, 425, n.5 (7th Cir. 2003) (holding that "in resolving a motion to dismiss, the district court is entitled to take judicial notice of matters in the public record"); *Anderson v. Simon*, 217 F.3d 472, 474-75 (7th Cir. 2000) (same). The two Eastern District of Michigan opinions that Defendants attach as Exhibit D to their motion to dismiss are matters of public record. The Court therefore may consider them – just as the Court may consider any other pertinent judicial decision – without converting the motion to a motion for summary judgment.

### B. Whether Counts I and II Are Pleaded with Sufficient Particularity to Satisfy Rule 9(b)

Defendants argue that Counts I and II of Plaintiffs' first amended complaint must be dismissed because they fail to satisfy the pleading requirements of Rule 9(b). As stated above, Rule 9(b) provides that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b); see also *Borsellino*, 477 F.3d at 507; *Windy City Metal Fabricators & Supply, Inc. v. Midwest Ink Comp.*, 536 F.3d 663, 668-69 (7th Cir. 2008) (holding that Rule 9(b) requires a complaint to plead the circumstances of fraud or mistake, including "'the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff'" (quoting *Gen. Elect. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997)), and that failure to do so must result in dismissal). Plaintiffs concede that Rule 9(b) applies to its fraudulent inducement claims against Nationwide and Kimmey, but argue that they satisfied the pleading standard that the Rule sets forth.

Plaintiffs' complaint alleges that Defendants are liable for fraud because the pro formas associated with the IAA and CAP loans included erroneous information, understated the expenses that would be incurred in the expansion efforts, and set forth unachievable performance growth requirements. For example, Plaintiffs allege that although Defendants promised that fifty percent of the existing book of business at the McCabe Agency would be rolled into Plaintiffs' business, in fact only twenty percent actually was converted. In addition, Plaintiffs allege that Defendants' Texas sales manager misrepresented that ninety percent of Texas agents exceeded the pro forma revenue and growth projections. Plaintiffs further claim that the interest rates for the loans were uncompetitive and that Nationwide's own business strategy was counter to and undermined the business strategies that Nationwide required of its agents.

9

Relying largely on *DiLeo v. Ernst & Young*, Defendants argue that Plaintiffs' allegations are not pleaded with sufficient particularity to withstand dismissal. In *DiLeo*, a securities fraud case, the Seventh Circuit described the underlying events as one familiar to securities litigation (and, for purposes of this motion, analogous to the insurance agency scenario as well): "At one time the firm [or principal] bathes itself in a favorable light. Later the firm discloses that things are less rosy. The plaintiff contends that the difference must be attributable to fraud." 901 F.2d at 627. Yet, the investor-plaintiff in *DiLeo* did not cite "a single concrete example" of the purported problems and inaccuracies in loans issued by the defendant accounting firm. *Id.* at 626-27. Although investors eventually lost money as a result of these problematic loans, the plaintiffs failed to "point to some facts suggesting that the difference [in what a firm discloses about its financial stability] is attributable to fraud." *Id.* at 627. The court of appeals noted that "[s]ecurities laws do not guarantee sound business practices and do not protect investors against reverses. When a firm loses money in its business operations, investors feel the loss keenly. Shifting these losses from one group of investors to another does not diminish their amplitude any more than rearranging the deck chairs on the Titanic prevents its sinking." *Id.* As "[t]here is no 'fraud by hindsight,'" the court of appeals affirmed the district court's dismissal of the complaint for failure to plead with particularity. *Id.* at 630 (quoting *Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978)).

Here, as in *DiLeo*, Plaintiffs allege that Nationwide provided projections and estimates regarding expansion opportunities that were so unrealistic and overly optimistic that they amounted to misrepresentations proffered for the sake of defrauding Plaintiffs. Plaintiffs allege that they took out the CAP and IAA loans and expanded their agencies on the basis of the projections and estimates. Plaintiffs claim that when those forecasts did not bear out, Plaintiffs

suffered financial losses; for example, their loan payments were not waived because they failed to meet the purportedly unrealistic performance goals.

Defendants argue that Plaintiffs provide no support for their allegations of fraud by identifying: (1) what facts or allegations, projections, or estimates Nationwide actually misrepresented to Plaintiffs; (2) who prepared the growth plans, growth programs, and other documents that purportedly misrepresented the financial viability of the expansion efforts; (3) when the misrepresentations were made; or (4) how they were conveyed to Plaintiffs. Defendants point out that Plaintiffs make no allegations that undercut the notion that the projections were good faith estimates that simply did not pan out. Indeed, Plaintiffs fail to address a disclaimer in at least one of the pro formas that advised Plaintiffs that Nationwide could not guarantee a particular outcome from the expansion effort. [See 22, at 11.] Similarly, with respect to Defendant Kimmey, Plaintiffs fail to identify the purported misrepresentations that Kimmey made, or when or where they were made. Even with respect to the most specific of Plaintiffs' allegations, Defendants state that Plaintiffs do not identify the "Texas sales manager" who allegedly misrepresented to Plaintiffs that ninety percent of agents in Texas were exceeding growth projections, or how that representation was made.

Plaintiffs contend that the business plans and pro formas contain the misrepresentations that Defendants purportedly made, and that as Defendants themselves attached one pro forma to their motion to dismiss and Plaintiffs attached another pro forma to their opposition brief, "Defendants need only look to the pro forma and business plans themselves" to see the who, what, where, when, and why of the fraud allegations. [31, at 7-8.] Specifically, Plaintiffs say that "Defendants, and the Court, need only look to Defendants' Exhibit C to identify Defendant Kimmey as the prepare[r] of the business and pro forma for the Texas CAP loan." [31, at 8.]

11

Plaintiffs concede that they did not identify the name of the Texas sales manager who purportedly misrepresented agents' success rates to Plaintiffs or state when or how the misrepresentation was made. However, Plaintiffs ask in their opposition brief: "does Nationwide truly contend that it does not know the identity of its Texas sales manager in 2006?" [31, at 6.] Plaintiffs further argue that because every other allegation they make in the complaint states that misrepresentations were made in writing, Defendants could reasonably infer that the sales manager's misrepresentation was made orally.

Although it may be true that Nationwide is aware of the identities of its personnel and that the purported misrepresented projections may be unearthed in the voluminous exhibits that Defendants and Plaintiffs attached to their motion to dismiss and opposition brief, respectively, it is also true – and Plaintiffs do not contest – that this information is simply not alleged in Plaintiffs' complaint. Plaintiffs contend that they are unable to plead certain details additional to those provided in the complaint because those details are exclusively within Defendants' possession. The Seventh Circuit has held that "[s]pecificity requirements may be relaxed * * * when the details are within defendant's exclusive knowledge." *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994). Here, however, Plaintiffs presumably have knowledge at least of *what* statements within the pro formas and business plans were knowingly misrepresentative, as well as some information regarding when, by whom, and how they were made. Yet, Plaintiffs do not articulate their knowledge of these purported facts in their complaint.

At most, as Defendants point out, Plaintiffs themselves describe the statements in the pro formas and business plans as projections and estimates, not guaranteed results. Indeed, the crux of Plaintiffs' allegations appears to be that Defendants "misrepresented * * * hope." [19, at ¶ 20.] But, as the court in *DiLeo* stated, there is no fraud by hindsight, and, standing alone,

12

financial loss after holding out the prospect of gain cannot substantiate a claim of fraudulent misrepresentation. See *DiLeo*, 901 F.2d at 630 (quoting *Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978)). The Court therefore concludes that Plaintiffs have not pleaded with sufficient particularity the facts available to them. Counts I and II thus fail to satisfy the heightened pleading requirement of Rule 9(b), and must be dismissed.

### C. Whether Counts I and II Would State Causes of Action Even if Pleaded Sufficiently

Defendants argue that even if Plaintiffs had met the Rule 9(b) pleading standards, Plaintiffs' fraud claims would fail as a matter of law because they are based on Nationwide's statements concerning projected earnings and future promises rather than representations of past or existing facts. Under Illinois law, "statements regarding future events or circumstances are not a basis for fraud. Such statements are regarded as mere expressions of opinion or mere promises or conjectures upon which the other party has no right to rely." *Madison Assocs. v. Bass*, 511 N.E.2d 690, 699 (Ill. App. Ct. 1st Dist. 1987) (internal citations omitted); see also *North Am. Plywood Corp. v. Oshkosh Trunk & Luggage Co.*, 263 F.2d 543, 545 (7th Cir. 1959) (holding that, in an action in tort rather than contract, "we are not concerned with the enforcement of a promise by defendants" and that "failure to comply with a future promise does not constitute fraud" under Illinois law). An exception to the general rule pertains "where the false statements were part of a fraudulent scheme." *Madison*, 511 N.E.2d at 700. A plaintiff may plead fraud in such a case if he can show that the defendant in bad faith made false promises that it never intended to keep, for the purpose of inducing the plaintiff's reliance to his detriment. See *Lillien v. Peak6 Investments, L.P.*, 417 F.3d 667, 671 (7th Cir. 2005).

Here, Defendants contend that the pro formas and other representations upon which Plaintiffs' fraud claims are in part based are forward-looking estimates or projections. See

13

*Niemeth v. Kohls*, 524 N.E.2d 1085, 1094 (Ill. App. Ct. 1st Dist. 1988) (holding that a pro forma statement was a future projection of income and expenses and that representations contained therein therefore could not form the basis of a fraud action); *Sohaey v. Van Cura*, 607 N.E.2d 253, 273 (Ill. App. Ct. 2d Dist. 1992) (holding that pro formas were not actionable under the Illinois Consumer Fraud Act because "they were mere expressions of opinions with respect to future events"). Moreover, Defendants point out, the pro forma issued to Plaintiffs explicitly stated that "Nationwide cannot and does not guarantee the plan as outlined will result in achieving the desired objectives." [22 at 11.]

Because, for the reasons stated above, the Court dismisses Counts I and II of Plaintiffs' complaint for failure to satisfy the heightened pleading requirements of Rule 9(b), the Court need not address at this juncture whether the counts alternatively would require dismissal because they allege false representations based on intent or future conduct. The Court cautions, however, that if Plaintiffs seek to re-file these counts in a manner that satisfies Rule 9(b), they must also plead around the Illinois rule barring fraud based on future conduct if they can do so in good faith.

### D. Whether Count III States a Claim for Breach of Contract

Count III of Plaintiffs' complaint alleges that Nationwide breached its contract with Plaintiffs when it promised Plaintiffs that Nationwide (1) would provide Plaintiffs with an opportunity to succeed as a sales producer, but instead created rates and rules that caused Plaintiffs to lose a substantial amount of business; (2) would not compete with Plaintiffs by selling to customers directly or through affiliated businesses, but ultimately sold insurance through its affiliate, Allied Insurance; (3) would roll fifty percent of the book of business of the McCabe Agency into Plaintiffs' Nationwide business, but instead only converted twenty percent

of that business; and (4) would deduct outstanding loan balances from extended earnings, but failed to do so.

Defendants argue that Count III of Plaintiffs' first amended complaint must be dismissed because it fails to state a claim for breach of contract. Defendants point out that Plaintiffs do not identify a contract or contract provision that Defendants allegedly breached. Defendants contend that the only agreements between Plaintiffs and Defendants that are identified in the complaint – the Agent's Agreement and the Performance Agreement – do not include any contractual terms or promises that Defendants could have breached. For example, neither agreement guarantees Plaintiffs' success, prohibits Nationwide's sales to customers directly or through affiliated companies, or guarantees that Nationwide would convert fifty percent of the book of business of McCabe Agency.[6] Defendants argue that the only contract that Plaintiffs reference explicitly in Count III is the Credit Agreement and Promissory Note, and that it was this contract only that promised to deduct outstanding loan balances from Plaintiffs' extended earnings. However, Defendants state that the Credit Agreement and Promissory Notes were contracts that Plaintiffs entered into with Nationwide Bank, which is not a party to this action. Accordingly, Defendants argue that Plaintiffs have failed to state a claim against Nationwide for breach of contract.

The Court finds Defendants' arguments persuasive. Plaintiffs have failed to identify any contractual terms between the named Defendants and Plaintiffs that Defendants breached. If anything, the documents before the Court show that the agreements between Defendants and

---

[6] Indeed, Defendants contend that the Agent's Agreement contains a provision that retains the rights of Nationwide to conduct its business as it deems appropriate (including, presumably, selling through its affiliates). Defendants also contend that the IAA business plan and pro forma only estimated – rather than promised – that Nationwide could convert up to fifty percent of the McCabe Agency's existing book of business to Nationwide.

Plaintiffs set forth only promises, not guarantees, that were never realized. The Court therefore dismisses Count III of Plaintiffs' complaint.

### E. Whether Count IV States a Claim for Unjust Enrichment

Defendants argue that Plaintiffs' unjust enrichment claim must be dismissed because the remedy for that claim falls within the Agent's Agreement and Performance Agreement that governed Plaintiffs and Defendants' relationship. Under Illinois law, when a claim falls within an express contract, the remedy of unjust enrichment is unavailable. See *Utility Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 688-89 (7th Cir. 2004) (holding that "[w]hen two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract"). To determine whether a claim falls outside a contract, a court should look to the subject matter of the contract as a whole rather than to contractual terms or provisions related to the claim. *Id*. at 689.

Count IV of Plaintiffs' complaint states that Nationwide was unjustly enriched by the additional storefronts, advertising of its business, acquisition of new books of business, relations with other insureds, and loan repayments and interest that it gained from Plaintiffs' work. Plaintiffs concede that the Agent's Agreement and the Performance Agreement governed their relationship with Defendants, and do not, by way of this litigation, seek to invalidate those agreements. Furthermore, Plaintiffs do not contest that the subject matter of these agreements concerned Plaintiffs' business relationship and expansion efforts with Nationwide. Plaintiffs' unjust enrichment claim thus falls squarely within Agent's Agreement and Performance Agreement. The claim therefore fails as a matter of law.

## IV. Conclusion

For the reasons stated above, the Court grants Defendants' motion to dismiss [21] in its entirety. Plaintiffs' first amended complaint [19] is dismissed without prejudice. Plaintiffs are given leave to file an amended complaint within 28 days if they believe that they can address some or all of the deficiencies in their existing complaint.

Dated: July 26, 2011

Robert M. Dow, Jr.
United States District Judge